NEW YORK PRACTICE REPORTS. 127

Johnson agt. N. Y. Central R,R. Co.

## SUPREME COURT.

### DWIGHT JOHNSON agt. THE N. Y. CENTRAL RAILROAD Co.

On a question of evidence arising upon *instructions* by the owner or consignor of goods to the agent of the carrier, for their transportation ; it is only when the witnesses—the owner on one side, and the agent on the other—*differ* that it becomes important to determine which of the two is most likely (being 'equally credible) to remember the instructions and accompanying circumstances accurately.

When the transactions in which a person has been engaged, are not only numerous but of a uniform character, the probability of their being remembered would be very slight, unless attended by something peculiar to some one or more of them. Whent he transactions are numerous but not of a uniform character, the chances of their being remembered are very largely increased.

Where the shipment by the consignor was of property in which he or his firm, were personally interested, and whose memory was directed to the bargain and instructions to the agent of the carrier very soon afterwards, and where he swears positively to what occurred at the time of the bargain for the carriage of the goods ; and the agent of the carrier, who was accustomed to ship a very large quantity of goods almost daily, and had no personal interest in them, further than to see that he performed his duty, and testified that he had no definite recollection of what occurred at the time of the bargain, but relied in part upon the course of business, upon the entry on his books and the way-bill :

*Held,* that equal weight could not be given to such evidence, much less could that of the consignor be rejected, and that of the agent adopted.

The conclusion must be that the instructions given to the agent of the carrier by the consignor, as to the manner in which the goods should be carried, were the true instructions. This being so, the court of appeals holds, in this case, (33 *N. Y. R.,* 610,) that the defendant—the carrier, was bound by them, and it was a breach of duty not to obey them.

It is immaterial in this case whether the consignor or consignee owned the goods—there is no evidence that new instructions were either given by or asked by either at the terminus of the carriers line ; and no new instructions were needed.

As the property could not be sent as directed by the consignor, at the terminus of the carriers line, it was the duty of the carrier to store it and notify either the consignor or consignee.

*April,* 1870.

THIS cause was decided by the court of appeals, September term, 1865, (33 *N. Y. R.,* 610,) and judgment reversed, and a new trial ordered, with costs to abide the event. By

consent, the new trial was had, before Judge MULLIN, as referee.

GEORGE A. HARDIN, *for plaintiff.*

The action is for the value of ninety-one bales of tow, delivered by the plaintiff's firm to the defendant at Little Falls, November 29, 1854.

The defendant undertook to transport the tow to Albany, on the road and to forward it by " the People's Line of steamboats, thence to New York city." The address was to E. Ludlow, jr., New York city.

The testimony which was given, and in the case when it was decided by the court of appeals, as reported in (33 *N. Y. R., at p.,* 610,) is all in the case now, with such additions and modifications as were made by witness, Johnson—and the evidence of H. W. Priest, the freight agent at Little Falls.

It was clearly made out by the evidence given upon the hearing before the referee, that the contract and instructions were to transport by the People's Line.

This is established by the memorandum, at the foot of the shipping bill, in the words " via People's Line."

This fact is not disputed by any evidence in the case.

And standing as it does, uncontradicted and unshaken, it establishes a specific and binding instruction in regard to to freight in question.

I, In the language of Judge PORTER, it was the duty of the agent to obey the instructions given in regard to the freight in question.

(*a.*) The evidence of Mr. Johnson, whose conduct and truthful appearance at the hearing commend him to credence, establishes beyond peradventure that the instruction was, send by "the People's Line," and that unless it could go by People's Line' " he did not wish to send it."

This was a strong prohibiting, the sending by any other

line, " or it establishes in the language of Judge PORTER, an express understanding that the hemp was not to be forwarded to New York, unless by the People's Line."

And as the judge adds: "If this was so, defendant was clearly liable."

" On the refusal of the steamboat proprietors to receive the property, the company should either have communicated the fact to the plaintiff, or it should have relieved itself from liability by depositing the hemp, for safe keeping in a suitable warehouse."

The defendant did neither of these things, and is therefore, liable for the consequences of the omission. Upon this question, there is not even an attempted contradiction or dispute of the plaintiff's case.

If the case stood here, the action would be sustained.

(b.) But the refining counsel for the defendant, insists that *prima facie* the consignee and not the consignor, was the owner of the property. I reply to this first: Then the defendant should have consulted the consignee, and for not doing it or storing the property in a warehouse, awaiting instructions, became liable for the consequences which followed the deviation from the instructions given; that risk of consequences it assumed when it voluntarily undertook to designate the next means of transportation.

And secondly, I reply that the evidence at the hearing establishes the fact, that Mr. Johnson's firm remained the owners of the property. E. Ludlow, being only an agent of the plaintiff's firm. (*See evidence of Johnson*).

(c.) This view of the case is borne out by the further language of the court of appeals to wit: " *The primary* duty of the agent is to observe *the instructions of his principal, and when he departs from these he must be content with the voluntary risk he assumes.*"

(d.) The argument of defendant's counsel, that the plaintiff should have caused to be entered upon the shipping bill, " that this property is to be forwarded from Albany, only

130          NEW YORK PRACTICE REPORTS.

Johnson agt. N. Y. Central R.R. Co.

on the People's Line of. steamboats," is fallacious and absurd.

It virtually begs the question. It turns upon the assumption, that it was the duty of the plaintiff to require the property to be stored in a warehouse, in case the defendant could not carry out the instructions it had received.

The storing of the property by defendant, or asking for further instructions, was a part of defendant's duty.

The argument of the counsel, would require the plaintiff to say to the defendant, when a certain contingency arises: "I wish you to do *your duty*"-to wit: "Store my property or ask for instructions."

The law casts this instruction upon the defendant, it imposes a duty, the disregard of which renders the defendant liable, and the enforcement of that liability is the purpose of this action.

II. The testimony given by Mr. Johnson, is entitled to faith and credit upon the subject of what took place when the freight in question was shipped.

1st. He gave his evidence in 1856–7, when all the facts were fresh in his recollection on the former trial.

2d. The transaction was the only one of the kind he ever had while in business at Little Falls.

3d. It was called to mind immediately after the news of the loss of the freight in 1854.

4th. He was refreshed on the hearing, by his evidence taken in the case in 1856.

5th. He appeared upon the stand before Judge MULLIN, like a candid, intelligent and truthful gentleman, and nothing occurred at the hearing, to in any way weaken his evidence except it be the vague and indefiinite want of recollection of Priest, who was sworn thirteen years after the transaction, not having been sworn on the former trial, and having had hundreds of conversations, and contracts as to freight—and confessing that he did not recollect anything particular as to this shipment.

Johnson agt. N. Y. Central R.R. Co.

Besides, Priest only pretended to speak from a loose general inference, as to what had actually taken place—as he says on cross-examination : "I have stated that I had no definite recollection of what took place between me and Mr. Johnson, I stated what was true when I stated this."

Can testimony of such a witness be said to amount to anything, as to a transaction thirteen years gone bye?

6th. The evidence of Johnson, as to what took place, is clear and it seems to me very natural and probable. He had just returned from New York, and knew the *then* price of the tow, and what he could realize for it there, and he had just discovered that it would not answer his purposes at Little Falls, and it was known to him that it could be sent by Hudson River Railroad; and he very naturally remarked, that if the defendant could not send it by "the People's Line," he did not wish it shipped. Then it was, Priest assured him it could be shipped by the "People's Line."

7th. The pretense of the learned counsel, that Priest had no authority to take instruction and make this contract, is overturned by the fact that all the instructions Priest had as to his duties, were in general orders as to rates and prices.

And again, by the fact that he had all that season received freight and shipped freight by the People's Line, with through tariffs and made conditions and charges for the entire route between Little Falls and New York city.

9th. The court of appeals say in regard to the plaintiff's case: "The evidence would have authorized the jury to find that there was a breach of duty by the defendant;" and such finding we submit, should be made by the referee, and a judgment ordered for the plaintiff, for the value of the freight with interest and costs.

S. T. FAIRCHILD, *for defendant.*

The eevidence in this case establishes the facts to be

as follows, viz.: On the 29th of November, 1854, the plantiff delivered to defendant, at Little Falls, a quantity of flax-tow, consigned to E. Ludlow, jr., New York, via People's Line. The defendant carried the tow over its road to Albany, where the road terminates, and there offered the tow to the People's Line, which is a line of steamboats running on the Hudson River between Albany and New York, carrying passengers and freight. The People's Line refused to receive the tow. The defendant therefore, immediately delivered it to the Eckford Line, which is a line of barges, engaged in carrying freight on the Hudson River, between Albany and New York. The Eckford Line was a safe and responsible line, and was the usual way in which flax, tow, and property of that description was carried between Albany and New York. The barge on which the tow was shipped was lost in a storm on the river, before reaching New York, and the tow destroyed. At the time when the plaintiff delivered the tow to the defendant, both he and the agent of the defendant to whom it was delivered, believed that it would be forwarded from Albany by the People's Line.

Upon these facts, the plaintiff bings this action, and desires to recover upon the ground, that when he delivered the tow to the defendant, he forbid the defendant sending it from Albany in any other way than by the Peple's Line, or to use the language of Judge PORTER, in his opinion in this case in the court of appeals, " that the defendant received the property with an express understanding, that the hemp was not to be forwarded to New York, unless by the People's Line.' The evidence does not establish nor tend to establish either of these facts—even though we regard the statement of the plaintiff himself, as the only evidence in the case. He says, he asked Priest, the defendant's agent, if he could forward the tow by the Peple's Line, and told him he did not then want to send it unless he could forward it by People's Line. Priest said, defendant would forward

NEW YORK PRACTICE REPORTS. 133

Johnson agt. N. Y. Central R.R. Co.

it. The plaintiff at the same time saw Priest make the entry on the defendant's books, " via People's Line," as appears on the shipping bill, at page 11 of the printed case. This evidence is not enough to establish the fact, either that the plaintiff forbid the forwarding under any circumstances in any way but by the People's Line, or that the tow was received by defendant " with an express understand, that it was not under any circumstances to be forwarded to New York, unless by the People's Line." When the plaintiff saw Priest make the entry on the shipping book, "via People's Line," he knew that the agent of the defendant at Albany, would understand from it that he was to forward the tow by way of the People's Line, if he could. The plaintiff knew also, or was bound to know that the same agent at Albany, would also understand that in case it should prove impossible to forward by People's Line for any cause, either the burning of a boat and the discontinuance of the line, or by the refusal of the line to take them, that it would be his duty to forward in some other safe way in which such property is usually carried. If the plaintiff really intended to provide for the case which actually happened—the refusal of the People's Line to carry—he should have said to Priest at the time, and required him to enter on the shipping bill : This property is to be forwarded from Albany, " only in the People's Line of steamboats," in the language of the complaint, in case that line refuses to take it, or if anything occurs by which it shall be impossible to forward by that line, the tow is to be stored in Albany. The plaintiff gave no such instruction, and Priest swears that if he had, he should not have received the tow—having no authority to receive property in such way, or in any other than the usual way, to carry to end of defendants' road, and from there to forward in the customary way under the circumstances. Assuming that the testimony of the plaintiff presents the true state of the case, it does not show such a neglect of duty on the part of the defendant as entitles the plaintiff to recover. It

is precisely as if the consignee, E. Ludlow, jr., had lived in Albany, and the plaintiff had given the same instructions to Priest that he says he did in this case. Can you deliver this tow to E. Ludlow, jr., at Albany, if you cannot, I do not now wish to send it. Priest says I can, and takes and receives the tow, on its arrival at Albany, Ludlow is dead or has removed or refuses absolulely to receive such a combustible material as tow into his warehouse. In such a case the defendant would not only have the right, but it would be its duty to deliver the tow to somebody else than Ludlow, to some wharehouse-keeper for storage.

The plaintiff does not claim that the defendant agreed absolutely to carry from Albany, to New York, via People's Line. The defendant had no control over the People's Line, and therefore no power to make such a contract. Certainly the defendants' freight agent at Little Falls, had no such power—and he swears that he had not.

The plaintiff says, there was communication by mail and telegraph between Albany and Little Falls, and when the People's Line refused to take the tow, the defendant should have asked the plaintiff for instructions. The complete answer to this is, the plaintiff had no power then to give instructions; when he consigned the property to E. Ludlow, jr., N. Y., the consignee became *prima facie* the owner of the property, and the defendant had no right to regard any instructions but his. If the plaintiff had been asked for instructions and had said store the property in Albany, Ludlow could have sued and recovered damages. (2 *Kent* 711–12, 7th *Ed.*; 8 *How. U. S. R.*, 428).

I have so far assumed that the plaintiff's testimony is true. But it is not true. His story is absurd, unusual and unnatural. He wanted to send the tow to New York and to send, it may be by the People's Line. He says he supposed it could be sent by that line, and so Priest supposed. He says he was surprised when he found it had not been sent by that line. So believing as he did, he had no motive

to do anything but give the usual instructions, send to New York, via People's Line. These were the instructions which were given, and the only ones as Priest swears, and he is confirmed by the entry which he made at the time in the plaintiff's presence, and which the plaintiff saw. He is confirmed also by all the inferences rightfully to be drawn from the nature of the case, and the information then possessed by both Priest and the plaintiff.

It is not claimed on the part of the plaintiff that the defendant is liable as a common carrier—an insurer of property. The claim is made solely upon the ground that the defendant as plaintiff's agent has violated instructions as to the forwarding the property.

' The defendant claims with confidence, that there were no such clear, specific instructions as would justify it, under the circumstances, in stopping the property at Albany, on the refusal of the People's Line to take it—that it acted prudently and righfully under the circumstances, and is not therefore, liable in the action.

MULLIN, Referee.—The court of appeals, (33 *N. Y. Rep.*, 610,) having held, when this case was before it, that on the evidence then presented that there was a breach of duty by the defendant, which implies that there were instructions given which it was the duty of the defendant to obey, and that it had disobeyed them; the same conclusion must now be drawn from the evidence, unless the evidence given by the witness Priest, has so changed the facts as to take the case out of the legal rules applied to it by the court of appeals.

Mr. Priest is a gentleman of intelligence and integrity, and states the facts as he now remembers them. But this was but one transaction out of thousands in which he has been engaged during the last thirteen years; and it is not surprising that he should not be able to recall all that transpired when the bargain was made for the carriage of the tow in question. But the surprise is, that he should be

able to remember as much in relation to it as he does. In regard to many of the circumstances attending the transaction, his recollection corresponds with that of Johnson. It is only when they differ that it becomes important to determine which of the two is the most likely (being equally credible,) to remember them accurately.

Mr. Johnson seems to have been and to be a business man, and must have been in the last thirteen years, engaged in a multitude of transactions, some of which have made a very strong impression on his memory, and others perhaps, none whatever. When the transactions in which a person has been engaged are not only numerous, but of a uniform character, the probability of their being remembered would be very slight, unless attended by something peculiar to some one or more of them. When the transactions are numerous but not of a uniform character, the chances of their being remembered are very largely increased.

It is the mingling together of so many circumstances nearly identical and yet distinct that confuses the memory, and produces doubt and uncertainity, or renders impossible the separation of any one transaction from the mass with which the witness has been connected.

Johnson, no doubt has been concerned in the shipping of large quantities of property, since the fall of 1854, but it is more than probable that he has not been concerned in one, where Priest has been concerned in one hundred. The shipments by Johnson, were of property in which he or his firm were personally interested. Priest had no personal interest further than to see that he performed his duty; the loss fell on Johnson or his firm—none fell upon Priest. Johnson's memory was directed to the bargain, and instructions to defendant's agent very soon afterwards. Priest does not seem to have had his attention called to it, until about the time of the trial of this case. Johnson swears positively to what occurred at the time of the bargain for the carriage of the tow.

Priest says, he has no definite recollection of what occurred at the time of the bargain. He relies in part upon the course of business, upon the entry on his books and the way bill. I cannot give equal weight to the evidence of these men, much less can I reject the evidence of Johnson, and adopt that of Priest. I think, Johnson is most likely to remember what occurred, and although interested, I cannot disbelieve him in the absence of any evidence affecting his character for truth, and adopt that of a witness unquestionably truthful, but who does not profess to remember, and who from the very nature of the case, cannot be expected to remember, accurately or fully, the circumstances connected with the bargain for the shipment of the property.

I am constrained to find therefore, that Johnson instructed the agent of the defendant, to send the tow by the People's Line, and by no other.

This being the instruction, the court of appeals holds that the defendant was bound by it, and it was a breach of duty not to obey it.

The defendant's counsel suggests that the property being consigned to Ludlow, in New York, is evidence of the ownership by Ludlow, and that he only could give instructions as to the manner of conveying it to New York, and therefore when it was refused by the People's Line, the defendant stood in relation to the property without instructions, and was authorized to deliver it to any safe and responsible line to be carried to New York.

In this, I think he is mistaken; *prima facie* the consignee is owner, but the real ownership may be shown, and when shown the instructions of such owner must be obeyed, unless the carrier while ignorant of the true owner, has received instructions from, or has in some way become responsible to the apparent owner, for or in reference to the property, in which event the real owner cannot assert his rights to the prejudice of the carrier.

But the contract made with the carrier, or instructions

given by the consignor to him, bind not only the carrier but the consignee, and the latter, although the real owner takes the goods *cum onere* owner.   The consignor is for the purpose of the arrangement to carry, the agent of the consignee, and his acts bind the consignor, as the acts of any other agent bind his principal when acting within the scope of his authority.   It was therefore, immaterial whether the consignor or consignee owned the goods—there is no evidence that new instructions were either, given by or asked from either.

No new instructions were needed—a contingency had arisen not contemplated by the parties, but one for which the instructions provided, which were to send by the People's Line only.   The property could not be sent by that line, it was therfore at the terminus of the defendant's line, not without instructions as to the disposition to be made of it, but with positive instructions that it was not to be sent by any mode of conveyance whatever.   It was the duty of the defendant to store it and notify either the consignor or consignee.

But it is unnecessary to discuss the legal questions, they have been disposed of by the court of last resort, and nothing I can say, can give it any more force than it has now.

There must be judgment for the plaintiff.